Good morning. May it please the Court and Council, my name is Tony Rothard. I represent the appellant in this case, Lawrence Wilson. This case involves three small signs displayed by a citizen at his home to communicate his views on important public issues to fellow citizens. Mr. Wilson sought a preliminary injunction prohibiting enforcement of a city ordinance that bans window signs and limits signs in his yard for the most part to one. While the four data phase factors apply to any request for a preliminary injunction in the circuit, under the en banc decision in Minnesota Citizens Concerned for Life Against Swanson in First Amendment cases, the controlling factor generally is likelihood of success on the merits. And the district court here made an abusive discretion by making an error of law in finding that Mr. Wilson was not likely to succeed on the merits. He is likely to succeed on the merits of his First Amendment claim for several reasons, including that the ordinance is content-based. Well, Council, do you say all of the ordinance is content-based or parts of it? The signed ordinance is content-based. Well, Council, it has a severability clause at the end, as you know is implied in Missouri law and is right in the face of the ordinance. Why isn't the sign prohibition clearly not content-based? My goodness gracious, it describes everything in the universe. Whereas, of course, the flag is content-based. I thought that'd be your position. But flags are signs under the ordinance. No, I thought it said they weren't. Well, it says certain flags are not signs. It says flags are not signs. My understanding is that the ordinance is that flags of an institution or a government entity are not signs. Well, read it carefully in five. It says flags shall not be considered signs. What do you think that means? I will look at that more carefully before I come out from rebuttal. But at the outset, as you noted, the definition of sign is very broad and would include flags if there were not an exception for some or all flags. In City of Ladew against Gileo, the Supreme Court remarked about the breadth of the definition of signs subject to restriction in the City of Ladew. But even that definition was narrower than the one here. It applied only to signs visible from the road. Bell Norris definition has no such limitation. And in Ladew, City of Ladew, any message would be allowed as long as it was on a flag of a rectangular shape. It allowed for sale signs, too. Well, yes. Didn't it? Yes. I swear it did. Yes, it did. In fact, it had to under. And it also allowed emergency signs or something like that. Emergency signs and informational signs like what the ordinance does. So regardless of what level of scrutiny is at play here, the government's interests are in conflict with the citizens' interests. The government has an interest in aesthetics. The government has interest in traffic safety and in neighborhood enterprises. This court said that those are significant interests. Not compelling, but more than just legitimate, significant interests. But a resident in their own home has a special interest in communicating on their own property. The Supreme Court said that in Ladew, before that in Vincent, before that in the Spence case involving the peace sign on the flag. And a sign in a yard or a window of a home has special communicative impact. It conveys not only the message that's on the sign, but it also conveys that a person living in this house believes in that message. And it's different than a sign anywhere else. A sign that says tax the rich that's just stuck along the road has a different communicative message than a sign that says tax the rich that's in front of a home in an affluent neighborhood, which has a different message than a sign that says tax the rich that's in front of the home in a less affluent neighborhood. Well, let me ask you, I guess I'm not asking you to give the city legal advice, but maybe this is indirectly that way. Can you have any restriction on signs? I mean, if you had five, 10, 20, and assuming they're content neutral, can you have any limitation size, color? I assume you could probably have limitation on obscenity, although that's a difficult term to define. But is there a limit? Is there a constitutional limit? You could also have setbacks and require signs to be so far back from the road. There are ways to deal with these aesthetic and traffic issues. So time, place, and restrictions are allowed if they're content neutral. I imagine that there probably is some number, either a limit on the number of signs or the total area of all signs that the city- What's our best indication for the Supreme Court about how many signs you can have? I don't think the Supreme Court has given us a good indication other than- They say in Gileo, you can't ban them all, which is the way Ledoux really interpreted it, despite our conversation before. So we can't ban them all, but how about five or six? Well, I mean, I think five or six is probably likely constitutional. Wouldn't even that need to be supported by something in the record? Whether it's two, whether it's six, whether it's 15, I think it's an interesting question. What is the outer limit? But what are we looking for? You've named a couple of significant governmental interests, aesthetics, public safety. I think those seem to be the two that are stressed here. How do you look at that? Well, I think what you do is you try a more modest restriction and see if there are any problems, any aesthetic or traffic problems. The city of Ledoux, for instance, in their case, aesthetics was one of their issues, and they had an expert report that looked at neighboring communities, neighboring municipalities that had a proliferation of signs and gave some opinion. It wasn't enough, the Supreme Court said, but gave some opinions about what the proliferation of signs had done to the aesthetics in those communities and to property values. And there's some testimony here about aesthetics and the goal of the people keep their homes well-maintained, their 50-foot lots maybe. Are you saying there needs to be more? What if there had been more evidence, more expert testimony to support this particular sign ordinance, the one sign with two sides? Would there be any amount of evidence in your view that would be sufficient to warrant that? I don't believe that would exist, but- Not even a traffic expert. But if there was a traffic expert- Harvard and Northwestern, traffic schools. And they told you that this causes X number of accidents a year, and some people may be killed in that, et cetera, et cetera. So I think that you don't have to wait for the evil to happen to try to protect against it, but even in Renton in those cases, there must be a substantial chance that the evil's going to materialize. In St. Louis County, there are 89 other municipalities, none of whom have a one accidents, causing death or otherwise, caused by signs being in a yard. So there's no reason- Is that in the record as to the different municipalities and their rules? No. I bet not, because it's almost impossible to figure out. Many for years forbid real estate signs. I won't use your time, but I'll be quick. They forbade them, period, and the Supreme Court of Missouri said you couldn't. Go ahead. Correct. And yes, it's hard to tell, but the one sign limit, definitely, and this is the crux of the case, I think, is not narrowly tailored. If a husband and wife disagree on an issue, only one of them can express the view in the special, impactive way of having a sign in their yard. If the land order wishes to exclude solicitors or say, you kids get off my lawn with a sign, then they have to forego expressing a political view. And getting back to the real estate signs in Belmore, the way we understand the ordinance is if a resident wants to use their sign to announce that their house is for sale, which they have the right to do under Missouri Supreme Court case and under landmark from the Supreme Court of the United States, then they can't engage in political expression. They can put it on the other side. They could put, right, they could have one sign B for sale and one side B political, right? Then only from one direction, which you are. Correct. Yes. They could have one side Clinton, one side Trump? You could, but then you'd only have half the communicative impact because you'd only reach half the audience. So in Belmore, you have this right under Ledoux to have a sign, a political sign, and you have the right under landmark to have a real estate sign, but you can't have both at the same time. You know, in addition to the lack of evidence, you know, there's never no ordinance with one sign has ever limited to one sign has ever been upheld. The fourth circuit and Arlington County Republican Committee against Arlington County enjoined a two sign limit and found that that was not narrowly tailored and closely tied to this tailoring is the idea that there have to be ample alternatives. Ample alternatives have to be of the same nature and quality of speech. In Ledoux, you know, as I've said probably too many times, the Supreme Court said that this type of speech is quite distinct in our country and quite has a communicative value that other type speech does not have. And in Windmark, in the related context of real estate signs, recognize that speech in the home is different. There are other ways to advertise property for sale besides putting out a for sale sign, but the court still found that they did not provide ample alternatives. Finally, I just want to say that another way of looking at the sheer breadth of the government's restriction on speech here is by looking at the large amount of everyday speech that is, that everyone would assume is allowed, that is in fact restricted. And that's our over breadth argument. We think that district court made an error in not applying the test in Stevens and Snyder against Cape Girardeau and Waze against City of Lincoln to allow us to allow evidence of how this ordinance affects third parties. And I'd like to reserve the balance of my time for rebuttal. If you may, Mr. Brinker. Good morning. Police and the court. My name is Jeff Brinker, and I represent the city of Bellnor. You know, Judge White's ruling was on the motion for preliminary injunction, and he found that there was no basis that was presented in that hearing to allow for an injunction at that time. And I think that's right when you look at the record and you look at the specifics of what we're talking about here. First of all, with respect to this particular resident, Mr. Wilson, he has everything that's at issue here in this ordinance. He has a flag that says Irish for a day. He has not one and not two, but he has three signs in the yard, and he's got a sign posted in the door, right? So I don't see how there's any over breadth argument here that others may be somehow harmed in a way he's not. He's got everything right here in one nice little package. But he's illegal, right? Beg your pardon? He's illegal on his signs, right? He is illegal on his signs, absolutely. He's probably illegal on the flag, isn't he? Pardon me? He's illegal on the flag too, right? I don't think he is. I have a different reading of the statute about flags than my colleague does. I don't think he is. But all residents who had three signs to your question, Judge Benton, would be in violation of the ordinance. Do you believe it's severable? Of course. Do you believe the flag can be severed out? Yes, I do. Um, so there's no evidence in the record here that these signs were ever removed. He still has the signs in the yard, as far as we know. He still has that sign on his door that he's had for 10 years about, you know, if there's a fire, please save my cats. And as far as we know, the flag is still in the yard. But you did threaten to put him in jail and fine him a thousand dollars. That's what the ordinance says. Well, I mean, you arrested him for it. Correct. So, I mean, that's more than just an ordinance. I mean, if you go out and arrest somebody, and say you've got to appear in court and get a lawyer and pay for a lawyer and you may go to jail for 90 days, that's, you know, I'd consider that serious. I don't disagree. I don't disagree with that. And when I asked Mr. Wilson on the stand, were you aware about the Missouri statutes that basically say, you know, the ordinances aren't allowed to do that in Missouri. He was not aware of that. So, well, let me ask you about that. Sure. Does that, in and of itself, invalidate the city ordinance? As I understand it, there's a Missouri, I'm not sure it's a Missouri statute or constitution, but it prohibits a municipality from passing an ordinance with a penalty more severe than 30 days and a $100 fine. Is that right? I can't remember if that's specifically or if it's incarceration, but same idea. It's a statute. But does that, in and of itself, invalidate the statute that you tried to impose a penalty that violates the Missouri statute? Because of the severability clause, I wouldn't say that it would invalidate what we're here talking about, whether or not the signs and what he received a citation for violates the first amendment, Your Honor. So it's important that while my colleagues want to talk about the flag portion of the ordinance and they want to talk about various hypothetical situations, what if we have a that says, baby asleep or all deliveries in rear, that somehow that is impinging on the first amendment rights. But that's not the facts that we have here. It's not the claim that was submitted to the lower court. And I specifically asked Mr. Wilson because we heard during his direct testimony about the flags and what his neighbors have on their yards, what he has. And I said, isn't your beef here, isn't your problem here that you're presenting that you cannot have three signs? And the answer was, yes, that tailored what the, what the. So then what is in the record that supports the governmental interest in what I understand to be aesthetics and public safety? And tell me if there were more that were developed in the record. What is in the record that supports that decision for one side sign, two sides? Right. It's predominantly traffic safety, although aesthetics was also mentioned by Mayor Hook when he testified. But here's, here's what the evidence was. This city is less than one and a half square miles. It's relatively tiny. It has 1,400 residents and 95% residential. In that city, there are three schools. There is the Bell Nor Elementary School in which kids are dropped off all day long, you know, to and from school. There is Incarnate Word High School, which has 400 students. There is no bus service. All those students are either driving through the city streets to get to school or they're being carpooled. And to the north is the University of Missouri-St. Louis, which is a commuter college. And again, there are student drivers driving every day to and from school. So the safety considerations of Bell Nor, setting aside the aesthetics, but the safety considerations were the fact that in this city, which is established, it has narrow streets. And the evidence was there's parking allowed on both sides of the streets. And when you have cars on both sides of the streets, two cars cannot pass at the same time. Under those circumstances, with the lots being the size that you mentioned before, relatively shallow lots, that the number of student drivers in the area was a concern from a traffic safety standpoint. And the way to control distractions in terms of what people have in their yards is to limit the number of signs and to limit the number of flags. So was there direct testimony? And I understood there was testimony about the nature of the city, the number of schools, the containment factor. Yes. Do you need some evidence or testimony or expert testimony perhaps that links those features with the type of sign that might be in there? Because there's one sign. I mean, can it be 12 feet by 12 feet? I mean, to me, that's more distracting than maybe five small ones. But what about those factors that all you've got is an ordinance that deals with the number of signs in it? There seems to be a lot of other factors related to signs. Right. Size, placement, what they're made of that also speak to that. There's several components to your question. I'd like to take them one at a time. First of all, there was no dispute by my colleagues about any of the parameters of the signs other than the number. So how far back they're set from the street, the size, the height they can be. There was no issue raised about those particular parameters in the ordinance. It was all about the number of signs. To your question about what was the scope of the evidence in terms of almost like was there expert testimony at this point at the juncture? No, there was not in the preliminary injunction hearing. Obviously, we haven't had the final trial on the merits with the rest of what the evidence may present. But at this point, the evidence has been what the mayor testified was the concerns of the mayor and the Board of Aldermen in creating the ordinance that they did. Did anyone testify but the mayor? Was the mayor the only witness? Only two witnesses were Mr. Wilson and the mayor. There was another component to your question that I think I forgot, Your Honor. What did I forget to answer? I forgot it as well. Okay, if I think about it, I'll circle back around. So under these circumstances, there was a reasonable balance between the residents' First Amendment rights and the city's interests that we've talked about. And the only way to address the concerns about traffic safety and aesthetics is to somehow regulate the number, amount, size, what have you, of signs. I heard my colleagues say that you can have a limitation of signs. Of course, you can have a limitation of signs. This case is not Ladue. This is not an overall ban on signs. You can have... Well, they allowed signs in Ladue. You know... That's right. They have exemptions. Correct. There are four different cases. Ban with exemptions. Right. That's not the situation here. This is a content-neutral. You can have one sign that has two sides, period. The other side challenged you by saying that there's nobody that's upheld one sign. And they mostly point to the Fourth Circuit opinion in Arlington County. Right. Now, do you have anybody that's upheld one sign? I beg your pardon? Do you have any court that's upheld a one-sign limit? None that I have found, Your Honor. Thank you. These are all very fact-intensive cases, as you know. And the way I read Arlington, the way I read Arlington is that the city sort of made a bald assertion, if you will, aesthetics, traffic safety. I don't see in that opinion the specifics that I just discussed that we put on on behalf of the city of Bellinor in terms of the size, the amount of traffic, the size of the streets, the nature of the drivers that are driving, the youthful ages of the drivers. But no, no cases aside that I'm aware of, nor has any case ever looked at the particular facts of this claimant and the particular facts of this ordinance and the particular facts of this city. They make an over-breath argument besides a content-based argument. What's your response to the argument that under your ordinance, you can't put a little street that says you've got Primark security, and you couldn't put it on the back door, even though nobody can see it. What about the over-breath argument? Well, I would go back to what the court said in Vincent, that it has to be both a real and a substantive infringement on the right of free speech. And we have to be careful that the over-breath exception all of a sudden isn't swallowing up what the underlying rule is to begin with. The court in Vincent said, just because you can hypothesize a situation in which an ordinance may be violative of the First Amendment doesn't mean that it's susceptible to an over-breath argument. And that's kind of what I think my colleagues are doing here to try to conceive of a hypothetical to get us to a place where all of a sudden there's an over-breath argument. That would be my response to that, Your Honor. Well, Counsel, how do you deal with something simple like this? As you know, in Missouri, we elect five statewide officials. You're aware of that. And the county, you elect umpteen layers of officials. Too many. Well, we won't go there. That's a hot issue these days. But my point simply is, how can one sign be enough to express anything when we're electing as we do in St. Louis County and Missouri? Very good question. And my answer to that, Judge, would be twofold. First of all, there's no time or duration limitations on this ordinance. So as we all know, Mr. Wilson still has his signs out for Clinton and Kander many years after the fact. So the signs can be rotated. You can have on Monday, Wednesdays, and Fridays your candidates for the first and second district. And on Fridays, Saturdays, and whatever, you can change to the other districts as well. And I want to address what your question kind of nicely segues to for me, the alternate means of communication. Because what we heard my colleagues say is that the power of communicating on your own property is that the author is known. Oh, my goodness, that's the general's house. And he has a sign out that says, stop all war. It's the power of that, right? None of these cases, none of these cases ever considered the power of social media. Every one of these cases in the 80s and 90s were talking about alternate means of communication like handbills and showing up slot. You know, the internet hadn't flourished the way it is now, right? We have Facebook. We have Instagram. You can tweet. You can blog. And it's cheap, and it doesn't take any more time than it does to put a sign in your yard and you self-identify. I, Jeff Brinker, think that President Clinton or Hillary Clinton got screwed, which was essentially why, you know, Mr. Wilson wanted that sign out in his yard to protest the presidential election and the senatorial election. There are alternate means available here. And I would dispute my colleague when he says that those aren't available here. Um, I think I've, uh, I think I've run out of things to, uh, to, to say. Is there anything else I can answer for you? No. I hope that you'll affirm Judge White's ruling. And I thank you for your time. Thank you, counsel. Mr. Rothert, we're back to you. Thank you. The evidence from the mayor is a lot, was a lot like a preamble. There wasn't a, there wasn't a site, there wasn't evidence in the judicial sense of, uh, facts, but, uh. He was under oath, correct? But he was giving information about what their reasons were. He was under oath, correct? Yes. Yes. Reasons why, uh, reasons, uh, but those reasons are, are not unique, uh, to, to Bell Moore. But even if they are, there are ways, uh, that those problems can be addressed without, uh, restricting speech or without restricting speech, uh, this much. Um, they do not have to allow parking on both sides of the street. Uh, they could regulate the size of signs. If they're distracting, they can limit the ordinance to signs that are visible, uh, from the street. If they're worried about any of these traffic issues, uh, the, the, while the fourth circuit, uh, and the Arlington case didn't go into the facts so much about, uh, the district court case, uh, did. And I think that the evidence there was very similar, uh, to what was presented here. It was the city manager giving, uh, an affidavit giving the reasons for passing the ordinance. But, um, at, at, while we have several theories of why we think this is, this, uh, we're likely to prevail on the merits, uh, the core is that the law is not narrowly tailored and it's overbroad. Uh, not only there are, are there no cases upholding a one-side ordinance, there are none upholding a two-side ordinance or a three-side ordinance or a four-side ordinance. Uh, and that has to be some evidence. Uh, there's some implication from that, that, that this, there is not a problem, uh, a serious problem caused in this country because people have signs in their yards. Um, and to, to answer your question, I, I'm looking at the definition of flag and, uh, the, I, we have read this as a flag, uh, that's not considered a sign is one that includes the patterns or symbols used as a symbol of government or institution, uh, on subsection five of the ordinance. Uh, what about the general severability point that you can take out all of five? Well, yeah, that, that is possible, but then I think the ordinance would run into conflict of the, uh, the federal statute on, um, federal flag statute that, um, prohibits cities from banning the flying of the American flag. Uh, which like, like, like landmark is, is another, uh, right that individuals have, and they should not have to choose between, uh, the right to have a real estate sign, the right to have a United States flag and the right to, uh, express a political view. So my time is expired. We ask that the, uh, district court be reversed. Thank you. Thank you. Uh, case number 18 dash 1753, uh, is submitted for decision and this court will stand in recess until.